## Ley *v.* Henry, Appellant (No. 1).

*Negligence—Automobiles—Bridge—Case for jury.*

1. In an action against the owner of an automobile to recover damages for personal injuries, it appeared that the accident happened on a public and much frequented bridge connecting two large cities. On the roadbed were two street car tracks. The roadbed and sidewalks

were not separated by guards or barriers, though each was constructed and ordinarily used for their respective particular purposes. The evidence showed that it was not unusual for persons who crossed the bridge on foot to pass over the roadway proper from one side to the other, and that this custom was not forbidden by the bridge authorities. Plaintiff in attempting to cross was struck by an automobile going at the rate of thirty miles an hour coming upon her behind a two horse truck wagon and striking her before she could get out of the way. The plaintiff was knocked into the air higher than the top of the auto, and the machine went on without slackening speed until it was stopped at the end of the bridge. *Held*, that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

*Negligence—Automobiles—Master and servant—Business of master— Case for jury.*

2. In an action against the owner of an automobile to recover damages for personal injuries sustained by the plaintiff as the result of the negligence of the defendant's chauffeur, the question of whether the chauffeur is acting within the scope of his employment, is for the jury, where the evidence shows that the chauffeur's duties were general, to take care of the car, run it and keep it repaired; that at the time of the accident the chauffeur was on his way to the garage, and that the defendant heard of the accident a day or two after it happened, and retained the chauffeur in his employ for more than a year afterward.

3. In such a case an offer to show that the chauffeur frequently took the car out against the owner's orders or knowledge will not be admitted where there is no proof that such violations of the duty were at any time near to the date of the accident.

*Negligence—Husband and wife—Remarks of counsel.*

4. In an accident case by a husband and wife to recover damages for injuries to the wife the defendant cannot complain of a statement made by counsel for the plaintiffs as to an amount which should be found for the husband, where the amount suggested was taken from the evidence as having been actually expended by the husband for the wife down to the time of the trial, and was not an unliquidated claim or a speculative amount; and much more is this the case where the verdict for the husband represented no more than the amount paid out by him to the time of the trial.

Argued April 18, 1912. Appeal, No. 111, April T., 1912, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1908, No. 484, on verdict for plaintiff in case of Frederick Ley and Violet Ley, his wife, v. D. F.

Henry.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Trespass to recover damages for personal injuries to a married woman.   Before KENNEDY, P. J.

At the trial it appeared that plaintiff was injured on September 27, 1907, on the Sixth street bridge in Pittsburg, by an automobile which ran her down.   At the time of the accident she was crossing from one side of the bridge to the other in an attempt to speak to a friend.

The court charged in part as follows:

It seems that there is a space between the sidewalk, whereon she was endeavoring to come to this side of the river, and between that sidewalk and the street car track was a space of fifteen feet which she had crossed, and was just about to step upon the car track when she discovered a car coming, and also a truck wagon, and she claims that at the time the automobile was a sufficient distance away to enable this chauffeur, in the management of the automobile, to check it up, and at least allow her to get over in safety, and she feared no danger from the automobile. But as she was about to step upon the car track she discovered the car and the truck wagon, by which she feared she might be struck, and to avoid that she stepped back from the track, attempting to go back to the sidewalk from which she had proceeded, but that she was not allowed sufficient time to reach the sidewalk until she was struck by this automobile, operated by the defendant's chauffeur, coming upon that side of the bridge on this fifteen foot space and coming at a very fast and unreasonably rapid rate of speed, an unsafe and unusual rate of speed, and that that caught her before she was able to reach the sidewalk, which she was endeavoring to do, the sidewalk from which she had proceeded across toward the west side of the bridge to meet her friend.   That, in substance, is the negligence of which she complains on the part of the defendant's chauffeur, namely, that he

was coming at this unreasonable, unsafe and unusual rate
of speed, so fast that she was not able to reach in safety
the sidewalk from which she had proceeded, but was
struck by him, and received the injuries which she has
described in your hearing.  She says that when she was
crossing she looked each way and saw, as I have told you,
the car coming, and the truck wagon, and she also saw
this automobile at a long distance away, and she claims
it was at such a distance that if it had been going at an
ordinary, usual or safe rate of speed, she would have
had plenty of time and opportunity to get back to the
sidewalk from which she had proceeded.  But fearing,
not the automobile, but the street car, that she might be
caught by that, it being between her, and the truck wagon
also between her and the automobile,—fearing she might
be caught by the car she stepped back entirely from the
street car track in her attempt to get to the sidewalk.
[She says that this automobile came at such a rapid, un-
safe and unusual rate of speed that she was not able to get
back in safety, but that it passed quickly around the wagon
and the street car, and caught her as I have said.] [4]
The negligence of which she complains is that the automo-
bile was going at this rate of speed, and did not allow her
sufficient time to get to the sidewalk in safety, and that
that was the cause of the accident and the resulting in-
juries to her.  [She first said the automobile was some 150
yards away, but correcting herself afterwards, she said
she meant feet, which, it is claimed, was ample distance
and time for her to get back to a place of safety if the
automobile had been coming at the ordinary rate of speed,
or if it had checked up as it approached her, where she
was in full view on this space between the track and side-
walk.  If that is true, gentlemen, then this chauffeur was
guilty of negligence, and that would render the defendant
liable in this action, he being in the employ of the defendant
at the time.] [5]  A chauffeur is employed for the purpose
not only of operating a car, but of taking care of it in the
meanwhile, and doing whatever is necessary for the pur-

pose of caring for and operating that car, and if he was operating the car, and proceeding with the car for any purpose at all in the business of the defendant, then the defendant would be liable in this action for any negligence of that chauffeur. We have evidence that after this accident the chauffeur was discharged. The defendant learned that he was in the habit of taking the car out without his order at different times; but that would not relieve this defendant from liability in this action. The presumption is that he was operating the car, and was doing so for the benefit, or in the business at least, of his employer, and unless it was shown otherwise, he would be liable. In other words, the fact of his discharging the chauffeur afterwards, on learning that he was in the habit of taking the car out without his orders, and on business of his own, would not relieve the defendant from liability in this action. Now, that is all I need to say to you in regard to the negligence which is claimed chargeable to this defendant, through the misconduct or want of proper care of the chauffeur. That is the meaning of the word negligence, a want of proper care under all the circumstances, and if you find that this chauffeur was operating the car, and was within the scope of his duty in his employment, the defendant is liable in this action, and the two plaintiffs would be entitled to verdicts at your hands, unless you find from all of the testimony another element, namely, that the plaintiff herself was guilty of contributory negligence under the circumstances. That is the position insisted upon strenuously by counsel for the defendant, that she, under the circumstances, was guilty of contributory negligence, negligence which contributed to the accident, and if so, if you should find from all the evidence that to be the case, then she and her husband are not entitled to recover anything, and your verdict should be for the defendant. Even if the chauffeur was guilty of negligence, the plaintiff cannot recover if you find that she was guilty of any negligence which contributed to the accident. Now, was she guilty of any negligence?

Here is a public bridge, and she is not compelled to go
upon any particular side of that bridge, she can go to
either side she sees proper [and she can cross the bridge
if in doing so she does not expose herself unreasonably to
the risk of danger]. [6]   Now we have it in evidence that
this was a busy street; the street on either side of the
bridge, and the bridge itself is a very busy highway, and
it is in evidence that there were a great number of vehicles
and passengers crossing the bridge at all times.   It is
claimed by the defendant that she, in crossing from this
place of safety on the east side of the bridge, was guilty of
negligence in attempting to cross through this throng of
people and vehicles, and across to the other side of the
bridge, and that that negligence caused or at least con-
tributed to the accident, and that therefore she cannot re-
cover.   That is a question for you to determine.   As I said
before, she had a right to cross that bridge unless she ex-
posed herself to danger.   [If the circumstances were such
that she could reasonably suppose that she could get
across in safety, then she was justified in attempting to
cross.]   [7]

In the course of his speech to the jury counsel for plain-
tiffs made the following statement:

I do not say anything that is wrong to the jury or that
I think is wrong; I say, and I repeat to you, gentlemen,
that the four years past the expenditure that her husband,
one of the plaintiffs, had, was from week to week, and it
was paid; consequently he is out that money, and he is
entitled to recover in addition to that money, a reasonable
amount for detention of the money, which is not to exceed
legal interest of six per cent.   And I say if you find she is
permanently injured, which I do not doubt you will under
the evidence, that for the next four years, of course you
would be making a present payment, consequently it is
ordinarily discounted because she is getting a lump sum
at the present time, but the only way to even it up is to
take the last four years and the next four years would
even it up, and make it $1,144.   If I am wrong about the

figures you will correct me, and if I am wrong about the law the court will correct me.

Verdict and judgment for Violet Ley for $1,500, and for Frederick Ley for $572.

*Errors assigned* among others were (3) answer to defendant's second point, quoted in the opinion of the Superior Court; (4–7) portions of charge as above, quoting them, and (11) refusal to withdraw a juror and continue the case on account of the remarks of counsel for the plaintiff above quoted.

*W. A. Stone,* of *Stone & Stone,* for appellant.—The plaintiff had a safe footway made for her, and she could hardly expect to cross the cartway without injury.   It was dangerous, and the rule, that where a person having the choice of two ways, one of which is protected and safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, holds that he is guilty of contributory negligence, and should prevail in this case: Corbitt v. Philadelphia Rapid Transit Co., 227 Pa. 297; Johnson v. Wilcox, 135 Pa. 217.

The case of Moon v. Matthews, 227 Pa. 488, and the cases therein referred to, should have required the court below to sustain the second point.

*Meredith R. Marshall,* with him *Thos. M. & Rody P. Marshall,* for appellee.—Pedestrians may cross streets at any point according to their convenience, but must use due care according to the circumstances: McIlhenney v. Philadelphia, 214 Pa. 44; Corbitt v. Rapid Transit Co., 227 Pa. 297.

In view of the three following cases the court could not affirm defendant's second point: Moon v. Matthews, 227 Pa. 488; Simmons v. R. R. Co., 199 Pa. 232; Marcus v. Gimbel, 231 Pa. 200.

OPINION BY ORLADY, J., July 18, 1912:

The plaintiff was crossing over the Sixth Street bridge

which connects the cities of Allegheny and Pittsburg, when she was run over by the defendant's automobile.

This bridge is a public thoroughfare sixty-eight feet wide, and 1,000 feet long, from shore to shore. The cartway, or roadbed is forty feet wide, paved with wooden blocks and has thereon two lines of street car tracks; on each side of the bridge there is a walk for pedestrians about ten feet in width. The roadbed and sidewalks are not separated by guards or barriers, though each is constructed and ordinarily used for their respective and particular purposes.

When this plaintiff was about 250 feet from the Allegheny side of the bridge she was signaled by a friend and requested to come over to the sidewalk on the opposite side of the bridge. She describes the accident as follows: "I was particularly anxious to see her. I looked up and down the bridge four or five times and attempted to cross over, I got very near the first car track and saw a car and a truck, then I looked up and down and saw an automobile, and I ran back to get out of its way, but it was coming at such terrific speed that I couldn't make it. When I saw it first it was about 100 or 150 feet away, behind a two horse truck wagon. I got out of the way of the truck wagon but couldn't get to the curb before the auto hit me."

The plaintiff admitted that many teams, street cars and automobiles cross the bridge, and that it is very much used at the hour of the day she was injured; however she insisted that it was not unusual for persons who crossed the bridge on foot to pass over the roadway proper from one side to the other; that there were wide open spaces between the ironwork of the bridge and dozens of persons cross it daily in the way she did. She was corroborated in each material statement by several witnesses who saw her when she was about seventy-five feet distant from the street car and at the first rail where she halted and turned to go back when the automobile passed the car on the right hand side at the rate of about thirty miles per hour, and

struck the plaintiff, knocking her up into the air, higher than the top of the auto and then went on without slackening speed until it was stopped at the north end of the bridge.

The superintendent of the bridge testified that while it is intended that foot passengers shall cross only on the sidewalks and not on the roadbed, that it is not unusual to see people going from one side of the bridge to the other so that, from the undisputed testimony it is manifest that it was neither unusual or prohibitive for foot passengers, men, women and children to cross the roadway. The bridge authorities knew of the frequent use of the roadway by foot passengers in going from one side to the other, and did not guard against such use by any barrier or guard. The plaintiff did no other or different thing from what she knew was done by others and was permitted by the bridge patrol. The traffic on the bridge was no more congested than on the streets with which it connected, though it would naturally be more rapid in its movement. An attempt was made to regulate speed by caution signs of "go slow—danger."

The case of Corbitt v. Philadelphia Rapid Transit Co., 227 Pa. 297, on which the defendant relies, is materially different in its facts. The plaintiff there was halted by the ending of the pavement and a hand rail extending across it. Instead of crossing the street where he knew there was a good sidewalk, he followed a narrow, rough, irregular dirt path with sloping sides across the bridge, which gradually became narrower between the rail and track. The night was dark and he was unable to see the car tracks and barely able to see the bridge rail. In the case before us the accident occurred in clear daylight where every object on the bridge was distinctly in view.

It was the bounden duty of the plaintiff to use due care according to the circumstances, and to avoid a known danger by the exercise of special precaution as the danger became more apparent, but the testimony in this case did not warrant the court in holding as matter of law that

she was guilty of contributory negligence. The conduct of the driver of the automobile was reckless in the extreme, and the question of the plaintiff's contributory negligence was fully and fairly submitted to the jury.

A more serious question is raised by the third assignment of error (defendant's second point), which was refused, and is as follows: "The evidence shows that the man Gray, the driver of the car, was not on the business of the defendant; that none of the defendant's family were in the car; that the errand upon which the car was taken was not the errand of the defendant; that Gray frequently took the car on his own business, which caused his discharge when discovered by the defendant. Therefore, under all the circumstances, the burden is shifted from the defendant and rests upon the plaintiff to show that the driver of the car was acting for the defendant and was in the scope of his employment, and there being no evidence of such a fact the verdict must be for the defendant." The point presented does not state the undisputed facts. The evidence does not show that anyone was with the chauffeur in the car when the accident happened. It does show by the defendant's testimony, that his duties were general—"duties of any sort—to take care of the car, run it, and keep it repaired," and as to Gray's special relation at the time of the accident, the defendant stated—" Q. Was he going towards the garage on that day—do you suppose he was? A. I suppose he was; he must have been as he was going the other way on the bridge to Allegheny. I understood the accident happened on the bridge near the other end. Q. And that is the way he would go to the garage, by way of the Sixth street bridge?" A. Yes. The defendant learned of the accident a day or two after it happened and retained the chauffeur in his employ for more than a year afterwards. Q. You have no recollection of what he was doing on this side of the river with the car that day? A. I can't remember anything about that. Q. Well, then at that time or now, do you know whether he was

on that bridge with the car that day by your directions or not? A. I don't think he was. I don't remember that he was. Q. Do you remember anything about his having the car that day? A. I know nothing about it. Q. But you do know, or don't you, that he was not on your business that day? A. I don't remember him being on my business at that time." It is not pretended that Gray, the driver, was on business of his own, and this evasive, contradictory, and indefinite denial of the driver's relation to the defendant at the time the accident happened is not sufficient to shift the burden of proof. From all that he stated it could be clearly and reasonably inferred that the driver was acting within the scope of the master's employment and for him. The authority to use the machine was general and even the owner could not say that he was acting against his will or independent of it. Taking the car to the garage was clearly a prosecution of the master's business. The offer to show that Gray frequently took the car out against the owner's orders or knowledge was not supported by proof that these violations of duty were at any time near to the date of the accident. It was not reversible error to refuse the point as it was presented: Moon v. Mathews, 227 Pa. 488. See also Marcus v. Gimbel, 231 Pa. 200; Bowling v. Roberts, 235 Pa. 89.

The remarks of counsel to the jury (eleventh assignment) did not unduly affect the defendant. The court fully explained the items to be considered in returning a verdict in plaintiff's favor. The amounts suggested by counsel were taken from the evidence as having been actually expended for the wife by the husband, down to the time of trial. This calculation was made from data furnished to the jury by the evidence—it was not an unliquidated claim or a speculative amount in a statement as in Connelly v. Rys. Co., 230 Pa. 366, and she was entitled, if to anything, to a further sum, as stated by the court—"whatever amount, if any, he will reasonably have to pay in the future." Moreover, the jury did not adopt the theory

of plaintiff's counsel as the verdict in his favor represented no more than the amount paid out by him to the time of the trial.

The case was ably and fairly tried and after an adequate submission to the jury in an impartial charge resulted in verdicts which were warranted by the evidence.

The assignments of error are overruled and the judgment is affirmed.

PORTER and MORRISON, JJ., dissent.